**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

**UNITED STATES OF AMERICA,**

        **Appellee,**

   **v.**                            **Appeal No. 25-4101**

**THEODORE MILLER,**

        **Appellant**

**<u>APPELLEE MEMORANDUM OPENING BRIEF</u>**

Appellant, Theodore Miller seeks appellate review of the district court's Memorandum Opinion and Order denying his Motion for Revocation of Magistrate Judge Tinsley's Detention Order and for Reconsideration for Bond entered September 18, 2024. Exhibit 1. For the reasons set forth herein, this Court should dismiss the appeal, or in the alternative, affirm the district court's Memorandum Opinion and Order.

**<u>JURISDICTION</u>**

A federal grand jury in the Southern District of West Virginia returned a fifteen-count indictment against Miller on September 4, 2024, charging him with twelve counts of wire fraud in violation of 18 U.S.C. § 1343, one count of money laundering in violation of 18 U.S.C. §§ 1957 and 2, and two counts of witness tampering in violation of 18 U.S.C. § 1512.

After conducting a lengthy detention hearing on August 16, 2024, the United States Magistrate Judge entered an Order of Detention Pending Trial. Exhibit 2. On August 26, 2024, Miller filed a Motion for Revocation of Magistrate Judge Tinsley's Detention Order

and for Reconsideration for Bond. (Dkt. No. 20).[1] The district court denied the motion by Memorandum Opinion and Order entered September 18, 2024. Exhibit 1. The matter was further litigated via motions filed by Miller *pro se* as well as filed by counsel. (Dkt. Nos. 62, 85, 71, and 93). Each motion was denied.

Miller filed a *pro se* notice of appeal on February 10, 2025, 145 days after entry of the September 18, 2024, Memorandum Opinion and Order. But for the procedural bar arising from the untimely notice of appeal discussed below, this Court generally has jurisdiction to review a district court's detention order pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3145(c).

## ISSUES ON APPEAL

Whether Miller is procedurally barred from appealing the district court's detention order where he filed a notice of appeal 145 days after that order was entered, and if not, whether the evidence as a whole supports the district court's determination that Miller posed a risk of flight or danger to the community?

## FACTUAL AND PROCEDURAL HISTORY

Appellant Theodore Miller was charged by federal criminal complaint in the Southern District of West Virginia on August 8, 2024, with wire fraud in violation of 18 U.S.C. § 1343. (Dkt. No. 3). He was arrested on August 9, 2024, and the Magistrate Judge convened a preliminary and detention hearing on August 15, 2024. Exhibit 3 – Transcript of Preliminary and Detention Hearing. At the hearing, the United States presented the testimony of FBI Special Agent Aaron Lee and introduced several exhibits relevant to the issue of detention. *Id.*

---

[1] References to pleadings filed in the district court but not attached as exhibits will be referenced as "Dkt. No. ____."

Lee testified that his investigation began when the West Virginia Securities Commission reported to the FBI that Miller had been selling unregistered securities. *Id.* at 6. The investigation revealed that Miller was soliciting people *inter alia* through email and social media messaging through to his company, Bear Industries, LLC, promising returns on investment of approximately 23% in certain real property and commercial interests. *Id.* at 7-9.

Lee described the scheme as it applied to one specific victim identified only as "C.T." *Id.* C.T. responded to a solicitation video Miller posted to his TikTok page seeking direct investments into a project to rehabilitate a small house and to build a dry-storage facility in Charleston, West Virginia. *Id.* at 9-10. C.T. requested and received an investment packet outlining the project. *Id.* C.T. researched the materials in the investment packet and learned that the properties in question were under the control of a company identified as Philco, LLC. *Id.* at 11. C.T. spoke with Miller by telephone, and Miller lied, stating that he had an ownership interest in Philco, LLC when he did not. *Id.* After Miller promised a return of 15%, C.T. invested $20,000 via wire transfer from California to Miller's Bear Industries bank account in West Virginia. *Id.* at 11-12. Bank records revealed that, rather than investing the money as promised, Miller placed $4,000 into his personal account, made a $5,200 payment toward an unrelated mortgage, and placed $9,000 into a separate bank account. *Id.* at 12. Miller did not complete the project, and never repaid any funds to C.T. *Id.* at 12-13.

Lee further testified that Miller's wife, Fatima Condezo, and his mother, Deanna Drumm, worked for Bear Industries, LLC and were also targets of the investigation.[2] *Id.*

---

[2] Drumm has since pleaded guilty to selling unregistered securities in violation of 15 U.S.C. §§ 77(e)(c), 77x, and 18 U.S.C. § 2. (S.D.WV a. Case No. 2:24-cr-00179).

at 20. Lee testified that Drumm had access to Miller's bank accounts and other assets, and that Condezo had access to Miller's personal property. *Id.* Lee testified that he had reviewed recordings of calls Miller made from the jail to Condezo and Drumm. *Id.* at 21, 24-26. The United States played relevant audio clips from the recordings. *Id.* In the calls, Miller is heard coaching Condezo and Drumm on how to remotely delete information from his cellphone. *Id.*

The United States also introduced records from the United States Customs and Border Protection setting forth border crossing information documenting Miller's international travel. *Id.* at 28-30. Exhibit 4. The records revealed that Miller had lived abroad for approximately two-and-a-half years immediately preceding his arrest. *Id.* They further revealed that he had traveled internationally on at least eight occasions since September 2020. *Id.*

The United States introduced several video recordings that Miller posted to his TikTok account. *Id.* at 30-34. The videos depict Miller in foreign locales soliciting investments, directing investors to his website, touting strategies for avoiding government oversight, stating that he "takes off" when stressed regardless of the day of the week, and that he is Teddy Miller and does whatever he wants. *Id.* at 30-34, 49.

Lee testified that the West Virginia Securities Commission had issued a "cease and desist order" to Miller in November 2022 to prohibit him from continuing to sell unregistered securities. *Id.* at 33-34. The United States introduced Miller's written response to the order. *Id.* at 34-35, 37-8. Exhibit 5. In the response, Miller denied selling securities and claimed he was not subject to the authority of the West Virginia Securities Commission. *Id.* Despite the warning and order to stop, Miller continued to run his fraudulent investment program through his website which was still active on the day of

4

the detention hearing. Exhibit 3 at 38. Finally, Lee testified that the United States Securities and Exchange Commission emailed a subpoena to Miller on February 13, 2024 to provide testimony at a proceeding on April 2, 2024. *Id.* at 38-39. Miller failed to respond and did not appear at the proceeding. *Id.*

The United States Magistrate Judge found "by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community" and "by a preponderance of the evidence that no condition of conditions of release will reasonably assure the defendant's appearance as required." Exhibit 3 at 58-59. Exhibit 2. In so doing, the court found that Miller's fraudulent conduct had been ongoing for a significant time, that there was significant loss to investors, that Miller "feels that he can do what he wants to when he wants to and how he wants to," and that his extensive foreign travel gave the court concerns that he would not appear as required. *Id.* The court further found that Miller posed a danger to others because it was not convinced that he would stop defrauding investors. *Id.*

On August 26, 2024, Miller's counsel filed a Motion for Revocation of Magistrate Judge Tinsley's Detention Order and for Reconsideration for Bond. (Dkt. No. 20). On September 18, 2024, the district court conducted a *de novo* review of the detention hearing and the magistrate judge's findings pursuant to 18 U.S.C. § 3145(b) and entered a Memorandum Opinion and Order denying the motion. Exhibit 1. The court, having reviewed the complete record from the August 16, 2024 hearing, quoted Magistrate Judge Tinsley's findings and described Miller's attempts to solicit his family to destroy evidence, his extensive international travel, his ties to Peru, his failure to comply with the West Virginia Securities Commission's cease-and-desist order, and failure to comply with a subpoena from the SEC. *Id.* at 2-3, 6-8. The court considered Miller's TikTok videos

including his admitted structuring of investments to "avoid SEC regulation and reporting requirements" and his spur-of-the-moment travel with his quote that he is "Teddy fucking Miller, and I do what the fuck I want to do." *Id.* at 3.

The court observed that circumstances had changed since the detention hearing in that Miller had been subsequently charged with twelve counts of wire fraud and witness tampering. *Id.* at 7-8. The court found that even setting aside the new charges, Miller's significant ties to Peru, his other international travel, his alleged fraud having been committed while out of the United States, his significant assets, his efforts to tamper with evidence, his disregard for authority, and the threat of financial harm to the public as well as his threat of obstructive conduct warranted detention. *Id.* The court made its findings by clear and convincing evidence with respect to the danger posed to the community and by a preponderance of the evidence with respect to the risk of non-appearance. *Id.* at 8.

Miller filed several motions either *pro se* or by counsel seeking to revoke the detention order or to reopen the detention hearing. (Dkt. Nos. 62, 71, and 85). Each of the motions was denied. (Dkt. Nos. 66, 75, 84, 90, and 94).

## DISCUSSION

### 1. The Appeal Should be Dismissed as Untimely Filed Under Fed. R. App. P. 4(b)(1)(A)

Pursuant to Fed. R. App. P. 4(b)(1)(A), a defendant's notice of appeal "must be filed in the district court within 14 days . . . the entry of . . . the order being appealed." This Court has held that "Rule 4(b)(1)(A) is an inflexible claim-processing rule" and "[w]hen the Government promptly invokes the rule in response to a late-filed criminal appeal, we must dismiss." *United States v. Oliver*, 878 F.3d 120, 123 (4th Cir. 2017). See also *United States v. King*, 834 F. App'x. 470 (10th Cir. 2021) (*per curiam*) (14-day deadline to file

notice of appeal under Fed. R. App. R. 4(b)(1)(A) applies to the entry date of the Order being appealed and not the entry dates of other subsequently entered Orders not being appealed).

Here, Miller filed his notice of appeal on February 10, 2025, — 145 days after entry of the district court's Memorandum Opinion and Order that is the subject of the appeal. Consequently, he is procedurally barred from prosecuting the appeal, and this Court should dismiss.

## 2. The Evidence as a Whole Supports the District Court's Detention Order

In "determining whether there are conditions of release that will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community," the judicial officer considers a variety of factors related to the defendant's history and characteristics as well as information about the pending charges. 18 U.S.C. § 3142(g). The judicial officer's determination relative to the defendant's risk of non-appearance is based upon a preponderance of the evidence. See e.g., *United States v. Stewart*, 19 F. App'x. 46, 48 (4th Cir. 2001) (*per curiam*). The judicial officer's determination relative to risk of safety is based upon a clear and convincing evidence standard. 18 U.S.C. § 3145(f).

"The standard of review for pretrial detention orders under 18 U.S.C. § 3145(c) is one of independent review, with 'deference to the determination of the district court.'" *Stewart,* 19 F. App'x. at 48 (quoting *United States v. O'Brien*, 895 F.2d 810, 814 (1st Cir. 1990)). "On appeal, the question becomes whether the evidence as a whole supports the conclusions of the proceedings below." *Id.* (quoting *United States v. Trosper*, 809 F.2d

1107, 1111 (5th Cir. 1987)). This Court should affirm the district court in the absence of clear error. *United States v. Williams*, 753 F.2d 329, 333 (4th Cir. 1985).

In this case, the evidence as a whole clearly supports the district court's Memorandum Opinion and Order denying Miller's Motion for Revocation of Magistrate Judge Tinsley's Detention Order and for Reconsideration for Bond. The district court properly conducted a *de novo* review of the fully developed record consisting of testimony, documents and audio/visual exhibits, and the magistrate judge's findings. The court's Memorandum Opinion and Order set forth its consideration of each of the factors set forth in 18 U.S.C. § 3142(g). Exhibit 1 at 5-8. The district court's determination was based on these considerations focusing on Miller's extensive personal, familial, and economic ties to Peru, his international travel, his vocalized disdain and disregard for regulatory authorities, his failure to comply with an SEC subpoena, his attempts to liquidate assets, his attempts to tamper with evidence and influence witnesses, the lack of a suitable residence, and the difficulty to ensure that he would not continue to engage in fraudulent schemes should he be released on bond. *Id.* In light of its factual findings, the district court properly found that there were no conditions or combination of conditions that would reasonably assure the safety of any person or the community and Miller's appearance at future court proceedings. These findings were not clearly erroneous. Consequently, this Court should affirm the district court's Order of Detention.

## **CONCLUSION**

For the reasons stated herein, the Court should either dismiss the appeal as being

untimely filed, or in the alternative, affirm the district court.

Respectfully submitted,

LISA G. JOHNSTON
Acting United States Attorney

By:

/s/Joshua C. Hanks
JOSHUA C. HANKS
Assistant United States Attorney
WV State Bar No. 8550
300 Virginia Street, East, Room 4000
Charleston, WV 25301
Telephone: 304-345-2200
Fax: 304-347-5104
E-mail: josh.hanks@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that the foregoing "Appellee Memorandum Opening Brief"
has been electronically filed and service has been made on all counsel by virtue of such
electronic filing this 7th day of March 2025, to:


Appellate Counsel Brian J. Kornbrath
Federal Public Defender
Federal Public Defender Office
230 West Pike Street, Suite 360
Clarksburg, WV 26301
Telephone: (304) 622-3826
Facsimile: (304) 622-4631
E-Mail: brian_kornbrath@fd.org

Trial Counsel Gordon L. Mowen, II, Esq.
Orndorff Mowen PLLC
135 Corporate Centre Drive, Suite 524
Scott Depot, WV 25560
Telephone: (866) 481-2765
Facsimile: (681) 245-6313
E-mail: gordon.mowen@om-pllc.com


LISA G. JOHNSTON
Acting United States Attorney

By:

/s/Joshua C. Hanks
JOSHUA C. HANKS
Assistant United States Attorney
WV State Bar No. 8550
300 Virginia Street, East, Room 4000
Charleston, WV 25301
Telephone: 304-345-2200
Fax: 304-347-5104
E-mail: josh.hanks@usdoj.gov